No. 23-70127

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

*In re* STATE OF OREGON,

     Petitioner,

         v.

U.S. DISTRICT COURT FOR THE DISTRICT OF OREGON,

     Respondent.

PAUL JULIAN MANEY; GARY CLIFT; GEORGE W. NULPH; THERON D. HALL; DAVID HART; SHERYL LYNN SUBLET; FELISHIA RAMIREZ, personal representative for the Estate of Juan Tristan, individually, on behalf of a class of other similarly situated,

     Real-Parties-in-Interest-Plaintiffs,

         v.

STATE OF OREGON; KATE BROWN; COLETTE PETERS; HEIDI STEWARD; MIKE GOWER; MARK NOOTH; ROB PERSSON; KEN JESKE; PATRICK ALLEN; JOE BUGHER; and GARRY RUSSELL,

     Real-Parties-in-Interest-Defendants.

REAL-PARTIES-IN-INTEREST-PLAINTIFFS' ANSWER TO PETITION FOR
A WRIT OF MANDAMUS

**Juan C. Chavez**, OSB No. 136428
**Brittney Plesser**, OSB No. 154030
**Franz Bruggemeier**, OSB No. 163533
**Alex Meggitt**, OSB No. 174131
OREGON JUSTICE
RESOURCE CENTER
P.O. Box 5248
Portland, OR 97208

**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
SUGERMAN DAHAB
707 SW Washington St Ste. 600
Portland, OR 97205

# TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND ............................................................ 1

I.     Factual and Procedural Background ................................................. 2

II.    Plaintiffs' Claims Against Governor Brown ..................................... 5

III.   District Court's Deposition Order ................................................... 7

ARGUMENT ......................................................................................... 10

I.     The district court did not commit clear legal error ...................... 11

     A.    This Court has never considered when extraordinary
          circumstances permit the deposition of a state official. ..................... 13

     B.    The district court applied the extraordinary circumstances test
          consistently with every other circuit to have applied it in this
          context. ................................................................................ 20

     C.    The district court correctly found that Governor Brown acted
          with and improper motive and that her motives are essential to
          Plaintiffs' Eighth Amendment claim against her. ............................. 23

     D.    The district court correctly found that Plaintiffs exhausted less
          intrusive means of discovery ..................................................... 27

II.    In the absence of clear error, the remedy of mandamus is unwarranted. ...... 29

CONCLUSION ...................................................................................... 30

STATEMENT OF RELATED CASES ................................................................ 32

CERTIFICATE OF COMPLIANCE .................................................................. 33

# TABLE OF AUTHORITIES

## Cases

*ABF Freight Sys., Inc. v. NLRB,*
  510 U.S. 317 (1994) ............................................................................. 17

*Aguilar v. Walgreen Co.,*
  47 F.4th 1115 (9th Cir. 2022) .............................................................. 30

*Andrews v. Cervantes,*
  493 F.3d 1047 (9th Cir. 2007) ................................................................ 4

*Atascadero State Hosp. v. Scanlon,*
  473 U.S. 234 (1985) ............................................................................. 18

*Bagley v. Blagojevich,*
  486 F. Supp. 2d 786 (C.D. Ill. 2007) ............................................. 22, 23

*Bauman v. U.S. District Court,*
  557 F.2d 650 (9th Cir. 1977) ......................................................... 10, 30

*Bogan v. City of Boston,*
  489 F.3d 417 (1st Cir. 2007) ........................................... 12, 20, 21, 22

*Buono v. City of New York,*
  249 F.R.D. 469 (D.N.J. 2008) ............................................................. 22

*Citizens to Pres. Overton Park v. Volpe,*
  401 U.S. 402 (1971) .................................................................. 15, 16, 22

*Clinton v. Jones,*
  520 U.S. 681  (1997) ........................................................................... 18

*Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.,*
  586 F.3d 703 (9th Cir. 2009) .............................................................. 11

*Coleman v. Schwarzenegger,*
  2008 WL 4300437 (E.D. Cal. Sept. 15, 2008) ............................. 22, 23

*Fair Fight Action, Inc. v. Raffensberger,*
  333 F.R.D. 689 (N.D. Ga. 2019) ........................................................ 23

*Farmer v. Brennan,*
  511 U.S. 825 (1994) ............................................................................. 24

*Freedom From Religion Found., Inc. v. Abbott ("FFRF"),*
  2017 WL 4582804 (W.D. Tex. Oct. 13, 2017) ............................. 22, 23

*Garcia v. San Antonio Metro. Trans. Auth.,*
  469 U.S. 528 (1985) ............................................................................. 18

*Givens v. Newsom,*
  2021 WL 65878 (E.D. Cal. Jan. 7, 2021) ..................................... 22, 23

*Gregory v. Ashcroft,*
  501 U.S. 452 (1991) ............................................................................. 18

*Helling v. McKinney*,
    509 U.S. 25 (1993) ............................................................. 4

*Hutto v. Finney*,
    437 U.S. 678 (1978) ........................................................... 4

*In re Bryant*,
    745 F. App'x 215 (5th Cir. 2018) .................................... 16

*In re FDIC*,
    58 F.3d 1055 (5th Cir. 1995) ............................... 16, 21, 22

*In re Grice*,
    974 F.3d 950 (9th Cir. 2020) ......................................... 11

*In re Mersho*,
    6 F.4th 891 (9th Cir. 2021) ........................................... 11

*In re Morgan*,
    506 F.3d 705 (9th Cir. 2007) ......................................... 19

*In re Office of the Utah Att'y Gen.*,
    56 F.4th 1254 (10th Cir. 2022) ..................... 12, 19, 20, 21

*In re Paxton*,
    60 F.4th 252 (5th Cir. 2023) ........................ 12, 16, 20, 21

*In re Sussex*,
    781 F.3d 1056 (9th Cir. 2015) ....................................... 25

*In re Swift Trans. Co. Inc.*,
    830 F.3d 913 (9th Cir. 2016) (per curiam) ............... passim

*In re U.S. Dep't of Educ.*,
    25 F.4th 692 (9th Cir. 2022) ................................... passim

*In re United States (Kessler)*,
    985 F.2d 510 (11th Cir. 1993) ....................................... 21

*In re Univ. of Mich.*,
    963 F.3d 460 (6th Cir. 2019) ......................................... 18

*In re Van Dusen*,
    654 F.3d 838 (9th Cir. 2011) ......................................... 30

*Johnson v. Lewis*,
    217 F.3d 726 (9th Cir. 2000) ......................................... 26

*Kyle Eng'g Co. v. Kleppe*,
    600 F.2d 226 (9th Cir. 1979) ......................................... 13

*L.A. Cty. Bar Ass'n v. Eu*,
    979 F.2d 697 (9th Cir. 1992) ......................................... 18

*Lederman v. N.Y.C. Dep't of Parks & Recreation*,
    731 F.3d 199 (2d Cir. 2013) ........................... 12, 20, 21

*Roche v. Evaporated Milk Ass'n*,
    319 U.S. 21 (1943) ......................................................... 10

*Stagman v. Ryan*,
  176 F.3d 986 (7th Cir. 1999) ................................................................ 13, 20, 22
*Thomas v. Cate*,
  715 F. Supp. 2d 1012 (E.D. Cal. 2010) ............................................................. 22
*Toguchi v. Chung*,
  391 F.3d 1051 (9th Cir. 2004) ......................................................................... 8, 24
*United States v. Morgan*, 313 U.S. 409 (1941) .................................... 15, 16, 19, 20
*Victory v. Pataki*,
  2008 WL 4500202 (W.D.N.Y. Sept. 30, 2008) ........................................... 22, 23
*Virgo Corp. v. Paiewonsky*,
  39 F.R.D. 9 (U.S.V.I. 1966) ................................................................................ 22
*Whitley v. Albers*,
  475 U.S. 312 (1986) ............................................................................................ 26
*Will v. United States*,
  389 U.S. 90 (1967) .............................................................................................. 10

**Statutes**

42 U.S.C. § 1983 ........................................................................... 2, 6, 16, 19
5 U.S.C. § 702 ....................................................................................... 14

**Treatises**

Charles A. Wright & Arthur R. Miller, 8B *Federal Practice & Procedure* § 2163
  (3d ed.) ............................................................................................................... 28

## INTRODUCTION AND BACKGROUND

The mandamus remedy is an extraordinary one, intended only for extraordinary situations and primarily those in which a district court commits clear legal error—that is, error providing this Court with a definite and firm conviction that a mistake has been made. *In re Swift Trans. Co. Inc.*, 830 F.3d 913, 916 (9th Cir. 2016) (per curiam). Clear error generally occurs where a district court's ruling contravenes authority on point from this Court. *Id.* at 917. There was no clear error here, and no other basis exists from which to issue an extraordinary writ.

The district court in this case ordered the deposition of former Oregon Governor Kate Brown, who is a named defendant in this action and whom no party disputes was personally involved in certain actions and inactions giving rise to Plaintiffs' claims. Those claims require Plaintiffs to prove that Governor Brown, through those actions and inactions, was deliberately indifferent to the rights of Plaintiffs and members of the certified classes they represent. Applying this Court's decision in *In re U.S. Department of Education*, 25 F.4th 692 (9th Cir. 2022), as well as caselaw from across the circuits addressing the deposition privilege as applied to high-level state officials, the district court held that extraordinary circumstances warranted its order.

The district court did not clearly err in doing so. Unlike many of its sister circuits, this Court has never addressed the deposition privilege in the context of a

state official.  In the absence of authority from this Court, and having surveyed

virtually every other authority on point, the district court applied a standard

consistent with or above the standards those authorities imposed.  Its ruling was

correct, and it certainly did not commit clear error.  There is no basis for the

extraordinary remedy that Governor Brown now requests.

## I.    Factual and Procedural Background

Plaintiffs are adults in the custody (AICs) of the Oregon Department of

Corrections (ODOC) during the COVID-19 pandemic.  Their claims in this case

allege systemic Eighth Amendment violations arising out of Defendants' policies

and practices relating to the implementation and enforcement of masking, social

distancing, and other measures necessary to protect against the spread of COVID-

19 in the prison setting.

In their operative complaint, Plaintiffs allege three claims for relief.  The

first claim, which they assert pursuant to 42 U.S.C. § 1983, alleges that

Defendants, including Governor Brown, engaged in conduct deliberately

indifferent to their rights, serious medical needs, and physical safety in violation of

the Eighth Amendment.  ECF 282.[1]  Plaintiffs allege, for instance, that Defendants

failed to "follow CDC Guidelines and implement necessary public health measures

to protect against the spread of COVID-19 in ODOC institutions, including by

---

[1]      Citations to "ECF" refer to entries on the district court docket.

failing to implement and enforce proper quarantines and/or social distancing for individuals who contracted or became exposed to COVID-19." ECF 282.[2] Plaintiffs' second and third claims seek relief on state-law negligence grounds. ECF 282.

Plaintiffs initially filed this lawsuit in April of 2020, and shortly thereafter sought preliminary injunctive relief to protect medically vulnerable inmates from the risks of COVID-19, including by requesting that Defendants reduce Oregon's prison population to allow for social distancing. *See* ECF 14. At that time, only 157 AICs had tested positive for COVID-19, and one AIC had died of the disease. ECF 203, at 7 n.1. In June 2020, the district court denied Plaintiffs' request for preliminary relief. ECF 108.[3]

Over the course of 2020, however, COVID-19 transmission in Oregon prisons surged. ECF 149, at 3. By December 15, 2020, more than 1600 AICs had

---

[2]     Plaintiffs also alleged that Governor Brown and Director Allen violated the Eighth Amendment by failing to prioritize adults in custody for COVID-19 vaccine distribution. ECF 282. Defendants moved to dismiss that claim for relief on the basis of immunity from liability under the Public Readiness and Emergency Preparedness Act, 42 U.S.C. § 247d-6d. The district court denied the motion, ECF 350, and Governor Brown and Director Allen appealed, ECF 367, 369. Those appeals are separately pending before this Court.

[3]     In her petition, Governor Brown quotes substantially from the district court's early order denying Plaintiffs' request for preliminary injunctive relief. *See* Petition at 3, 4, 9, 10. But as the district court later clarified, its holding at that juncture was "a factual determination based on the evidence before the Court at that time." ECF 149, at 12. In that early order, dated June 1, 2020, the district

3

tested positive for the virus, and an astounding nineteen AICs had died.  ECF 149, at 4.

In December 2020, the district court denied Defendants' motion for partial summary judgment.  ECF 149.  In that motion, Defendants had argued that qualified immunity foreclosed Plaintiffs' § 1983 claims because no clearly established precedent addressed the appropriate constitutional response to COVID-19 in prisons.  ECF 115.  The district court disagreed, finding "a clearly established right for individuals in custody to be free from heightened exposure to a serious, easily communicable disease."  ECF 149, at 8; *id.* at 10 (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993); *Hutto v. Finney*, 437 U.S. 678, 682–83 (1978); *Andrews v. Cervantes*, 493 F.3d 1047, 1050 (9th Cir. 2007)).  The district court further found that, at that juncture, genuine disputes of material fact foreclosed partial summary judgment.  ECF 149, at 10.  Defendants did not appeal that order.

In May 2021, Plaintiffs filed an amended complaint and moved to certify two classes.  The first class, the "Damages Class," includes AICs diagnosed with

---

court found that "Plaintiffs had not established *as of June 1, 2020* that Defendants were responding to the COVID-19 risks with deliberate indifference."  *Id.* (emphasis added).  By the end of 2020, in the face of 18 more COVID-19-related deaths and systemic evidence of failures to socially distance, failures to implement and/or enforce mask mandates, inadequate medical response, lack of testing, and mixing of COVID-positive AICs and staff with healthy AICs and staff, *see* ECF 149, at 5–7, the district court found that genuine disputes of fact foreclosed summary judgment on Plaintiffs' Eighth Amendment claim, ECF 149, at 13.

COVID-19 while incarcerated. ECF 377, at 53–54. The second class, the

"Wrongful Death Class," includes the estates of AICs who died in ODOC custody,

and for whom COVID-19 caused or contributed to their deaths. ECF 377, at 54.

In April 2022, the district court granted Plaintiffs' motion and certified the classes

pursuant to Federal Rule of Civil Procedure 23(b)(3). This Court denied

Defendants' application for interlocutory review of the district court's class

certification order. *See Maney v. Oregon*, No. 22-80033 (May 26, 2022).

## II. Plaintiffs' Claims Against Governor Brown

Plaintiffs' claims against Governor Brown are central to this petition. As

with the other defendants, Plaintiffs allege that Governor Brown was deliberately

indifferent to the health and safety of AICs in her custody by failing to implement

necessary public health measures to protect against the spread of COVID-19 in

ODOC institutions, including by failing to implement and enforce proper

quarantines and social distancing. ECF 282. To support that claim, Plaintiffs

contend that Governor Brown's decisions to close two ODOC institutions and

implement a population reduction program that never was intended to

meaningfully reduce the prison population—all in the face of the obvious risks that

COVID-19 presents in the prison setting—constituted deliberate indifference.[4]

---

[4] *See* App-247–49. Plaintiffs do *not* allege, and have *never* alleged, that "their
contraction of COVID-19 constitutes cruel and unusual punishment in violation of
the Eighth Amendment." Petition at 1. Nor do they allege that Governor Brown

In July 2021, Governor Brown moved to dismiss Plaintiffs' § 1983 claim, arguing that Plaintiffs had failed to allege facts establishing that she was personally involved in the conduct giving rise to Plaintiffs' injuries. ECF 245. The district court denied that motion, concluding that Plaintiffs had alleged "sufficient facts to suggest that a causal connection exists between Governor Brown['s] involvement in developing, overseeing, and authorizing ODOC's policies and Plaintiffs' alleged injuries, and that [she] knew or should have known the consequences of those policies." ECF 272. At the same time, the district court also denied Defendants' motion to strike the allegations of Plaintiffs' complaint relating to release or population reduction, on the ground that the allegations are relevant to Plaintiffs' claims. *Id*.

Over the course of this litigation, the parties have engaged in substantial discovery. As explained in further detail below, Plaintiffs not only served Governor Brown with interrogatories, but also deposed four members of Governor Brown's staff in an effort to discover through less-intrusive means the reasons she made the decisions she did. None of those sources provided Plaintiffs with this information. In April 2023, nearing the close of fact discovery, Plaintiffs noticed

---

"violated the Eighth Amendment by commuting the sentences of some AICs and by recommending the closure of two prisons." Petition at 2. Governor Brown's framing of Plaintiffs' claims flatly mischaracterizes them and misleads the Court.

6

the deposition of Governor Brown. Defendants refused to make her available for that deposition, so Plaintiffs moved to compel it. App-242–53.

## III. District Court's Deposition Order

The district court granted Plaintiffs' motion to compel Governor Brown's deposition, holding that Plaintiffs had satisfied the test set forth in *In re U.S. Department of Education*, 25 F.4th 692 (9th Cir. 2022). That test, the district court explained, "outlined three requirements a party must establish to depose a cabinet secretary: '(1) a showing of agency bad faith; (2) the information sought from the secretary is essential to the case; and (3) the information sought from the secretary cannot be obtained in any other way.' " Add-7 (quoting *In re Dep't of Educ.*, 25 F.4th at 702). The district court found "no reason to conclude that [this Court] would apply a different test to evaluate the deposition of a governor, who similar to a cabinet secretary is a high-ranking official serving in the executive branch," and therefore applied that test to Plaintiffs' motion. Add-8–9.

On the first requirement, "a showing of agency bad faith," the district court noted that Plaintiffs' claims against Governor Brown are grounded in allegations that she acted with deliberate indifference to the health and safety of AICs during the COVID-19 pandemic. Add-11. "Deliberate indifference," under this Court's precedent, requires that the official "knows of and disregards an excess risk to inmate health and safety." *Id.* (citing *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th

7

Cir. 2004)).  The court reasoned that, "although the deliberate indifference standard is not synonymous with bad faith," the Ninth Circuit "has likened the two standards"; "[a]t the very least, deliberate indifference reflects wrongful or improper conduct."  Add-11–12.  On that basis, the court concluded that Plaintiffs met the threshold showing of bad faith or improper purpose.  Add-12.

On the second requirement—that the information sought is "essential" to the case—the district court observed that, in this case, "there is no dispute that Governor Brown was personally involved in making the relevant decisions regarding ODOC's response to the COVID-19 pandemic in the state's prisons, and Governor Brown remains a named defendant in this action."  Add-14.  The district court then ruled Plaintiffs had established that "Governor Brown's testimony is necessary to prove their case, in particular their deliberate indifference claims against her."  *Id.*  It reasoned,

> Although Plaintiffs have now deposed members of the Governor's staff, as well as ODOC officials, no other witness can testify about Governor Brown's knowledge with respect to the heightened risk that COVID-19 presented in the custodial setting and the actions she took or did not take with that knowledge.  Plaintiffs are not directly challenging Governor Brown's early release decisions, but the information she received in connection with the early release program, as well as her decision to close two ODOC institutions during the pandemic, is relevant to her knowledge of whether the population density at ODOC institutions allowed for adequate distancing to protect AICs from the spread of COVID-19.  Those facts are essential to Plaintiffs' burden to prove that Governor Brown and the other defendants knew of, but disregarded, an excessive risk to AICs' health and safety.

*Id.* The court thus concluded that Plaintiffs had met the second requirement. *Id.*

With respect to the third requirement—that the information sought cannot be obtained in any other way—the district court found that Plaintiffs had served interrogatories on Governor Brown, that they had deposed several members of Governor Brown's staff, but that "[n]one of those discovery methods . . . provided Plaintiffs with all of the information they require regarding what Governor Brown knew—both from the sources already deposed but also from all other available sources of information to which she was privy—about the heightened risk of COVID-19 in the state's prisons." Add-16. Based on that finding, the district court held that Plaintiffs had established that the information sought is not otherwise reasonably available from other sources. *Id.*

Having concluded that Plaintiffs satisfied all three requirements set forth in *In re U.S. Department of Education*, the district court granted Plaintiffs' motion to compel Governor Brown's deposition. Add-18. To minimize the burden of a deposition on the governor, the court limited the duration of the deposition to two hours. Add-18.[5] Shortly after the order was entered, the district court stayed it pending this petition for a writ of mandamus. ECF 470.

---

[5] The district court did not reject the holding in *In re U.S. Department of Education* that the deposition privilege applies to both current and former public officials. *But see* Petition at 31–32. In fact, the district court acknowledged that

## ARGUMENT

"The remedy of mandamus is a drastic one, to be involved only in extraordinary situations." *Bauman v. U.S. District Court*, 557 F.2d 650, 654 (9th Cir. 1977) (citing *Will v. United States*, 389 U.S. 90, 95 (1967)).  It "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Will*, 389 U.S. at 95 (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)).  Stated another way, " 'only exceptional circumstances amounting to judicial usurpation of power will justify the invocation of this extraordinary remedy.' " *Bauman*, 557 F.2d at 654 (quoting *Will*, 389 U.S. at 95) (second internal quotation marks omitted).

This Court considers five factors in determining whether to issue the writ. *In re Dep't of Educ.*, 25 F.4th 692, 697–98 (9th Cir. 2022).  Those factors are:

> (1) the petitioner has no other adequate way to obtain the relief sought; (2) the petitioner will suffer damage or prejudice that cannot be corrected on appeal; (3) the district court clearly erred as a matter of law; (4) the error is often repeated or shows the district court's

---

holding, stating that "the deposition privilege continues to apply" after an official leaves office.  Add-17.

To be sure, the district court correctly observed that where, as here, the record contains no evidence that Governor Brown "is reemployed, [or] that any new employment or duties would interfere with her ability to participate in a brief deposition," "the rationale behind the deposition privilege applies with less force."  Add-17–18 & n.9.  For the reasons explained below, that observation is not inconsistent with this Court's caselaw.  Even if it were, it was not dispositive of the district court's ruling.

persistent disregard for the federal rules; and (5) there are new and important issues at stake.

*Id.* at 698 (citing *In re Mersho*, 6 F.4th 891, 897–98 (9th Cir. 2021)).  The factors "are not exhaustive."  *Id.* (internal quotation marks omitted).  Satisfaction of the third factor, however—that the district court clearly erred as a matter of law—"is almost always a necessary predicate for the granting of the writ."  *Id.*  As explained below, application of the above factors does not warrant issuance of a writ here.

## I.      The district court did not commit clear legal error.

Clear error is a "highly deferential standard of review" that "is not met unless the [Court] is left with 'definite and firm conviction that a mistake has been committed.' "  *In re Swift*, 830 F.3d at 916; *In re Mersho*, 6 F.4th at 898 (quoting *Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 708 (9th Cir. 2009)).  The Court "can develop a firm conviction that the district court has erred when [it] has already directly addressed the question at issue or when similar cases from [this Court], cases from the Supreme Court, cases from other circuits, the Constitution, or statutory language definitively show [the Court] 'that a mistake has been committed.' "  *In re Dep't of Educ.*, 24 F.4th at 698 (quoting *In re Mersho*, 6 F.4th at 898)).  A district court's ruling "usually cannot be clear error if there is no Ninth Circuit authority on point, or the question has not been addressed by any circuit court."  *In re Mersho*, 6 F.4th at 898 (citing *In re Grice*, 974 F.3d 950, 955 (9th Cir. 2020)).

This district court in this case did not err, and certainly did not commit clear error necessary to warrant the extraordinary remedy of mandamus. This Court has never considered when extraordinary circumstances permit a deposition of a state official. Although the Court recently clarified the extraordinary circumstances test as it applies to federal agency officials, that test was guided in significant respects by principles limiting the scope of judicial review that *federal* courts have over *federal* agency actions. *See generally In re Dep't of Educ.*, 25 F.4th at 699 (addressing whether the district court, "by denying the motion to quash the subpoena to depose the former [Secretary of Education], inappropriately breached the barrier separating one co-equal branch of the federal government from another"). But those limiting principles do not apply to the question that this case presents.

Notwithstanding the lack of authority from this Court, the district court applied the extraordinary circumstances test consistently with the way the test has been applied by virtually every circuit that has considered a request to depose a state or local official. *See, e.g.*, *In re Paxton*, 60 F.4th 252, 258 (5th Cir. 2023) (state attorney general); *In re Office of the Utah Att'y Gen.*, 56 F.4th 1254, 1259–60 (10th Cir. 2022) (state attorney general); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (mayor); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (mayor); *Stagman v. Ryan*, 176 F.3d 986, 994–

95 (7th Cir. 1999) (state attorney general). That test, as those courts have applied it, permits a deposition of a high-ranking state or local official only where the official has first-hand knowledge of the claim, where the information sought is relevant or essential to the case, and where the information sought cannot reasonably be obtained from other sources. In applying *that* test to this case, the district court did not commit clear legal error.

> ### A.  This Court has never considered when extraordinary circumstances permit the deposition of a state official.

Caselaw from this Court addressing the deposition privilege of high-level public officials is sparse, to say the least. In fact, the case on which Governor Brown relies—*In re U.S. Department of Education*—is one of only two cases from this Court addressing the privilege at all, and it arose in the context of an order compelling the deposition of the Secretary of Education, a cabinet-level federal official whose decisions generally are subject to judicial review only within the confines of the Administrative Procedures Act. 25 F.4th at 695. The second case, *Kyle Engineering Co. v. Kleppe*, arose in a similar context but addressed the privilege without meaningful explanation. 600 F.2d 226 (9th Cir. 1979) ("Heads of government agencies are not normally subject to deposition, and the district court's order directing Kleppe to answer interrogations in lieu of a deposition does not appear unreasonable."). This Court has *never* considered when extraordinary

13

circumstances permit the deposition a high-level state or local official. That, in Plaintiffs' view, is significant, and forecloses the mandamus remedy here.

Governor Brown argues that, even though *she* did not rely on it below, the district court clearly erred by not relying (to Governor Brown's satisfaction, at least) on this Court's decision in *In re U.S. Department of Education.* There, this Court held, among other things, that the party seeking to depose a federal agency official must first make a threshold showing of agency bad faith. 25 F.4th at 702. But for the reasons explained below, the "strong showing of bad-faith" requirement does not apply in this case. In this case, the district properly held that Plaintiffs' allegations that Governor Brown acted with an improper motive sufficed to meet any threshold requirement necessary to order her deposition. Add-11–12.

*In re U.S. Department of Education* arose out of a lawsuit alleging that the U.S. Department of Education had unlawfully delayed making decisions on student loans during Betsy DeVos's tenure as Secretary. 25 F.4th at 695. The plaintiffs sued under the Administrative Procedure Act, 5 U.S.C. § 702, alleging unlawful withholding or unreasonably delayed action on their borrower defense (*i.e.*, loan cancellation) applications. *In re Dep't of Educ.*, 25 F.4th at 696. During the case, they sought to depose four then-current and former high-level federal agency officials, including former Secretary DeVos. *Id.* The district court ordered the deposition, and DeVos petitioned this Court for a writ of mandamus. *Id.*

On review, this Court granted the petition, holding that "extraordinary circumstances sufficient to justify the taking of a cabinet secretary's deposition exist when the party seeking the deposition can demonstrate (1) a showing of agency bad faith; (2) the information sought from the secretary is essential to the case; and (3) the information sought from the secretary cannot be obtained in any other way." *Id.* at 702. The Court held that the district court had clearly erred by failing to find that the information sought from Secretary DeVos was essential to the case and that the plaintiffs had exhausted "all reasonable alternative sources" of obtaining the information. *Id.* at 703–04.

The bad faith requirement in *In re U.S. Department of Education* "comes . . . from the Supreme Court's guidance on long-standing administrative law." *Id.* at 702. Under the APA, courts have "some power to review agency action." *Id.* at 699. Ordinarily, however, that review is limited to the administrative record, "which is the agency's compilation of all the materials before it when it made the decision." *In re Dep't of Educ.*, 25 F.4th at 700. Only when a court finds "a strong showing of bad faith or improper behavior by the agency" may a court look beyond the limits of that record. *Id.* (quoting *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971)).[6]

_____

[6]     On bad faith, the Supreme Court, relying on *United States v. Morgan*, 313 U.S. 409, 422 (1941), has explained,

Unlike in *In re U.S. Department of Education*, the scope of review that applies to Plaintiffs' § 1983 claim is not limited in the way that the scope of judicial review is limited under the APA. In that respect, the bad faith requirement does not apply,[7] and makes the question that this Court resolved in *In re U.S. Department of Education* meaningfully different from the question presented here.[8]

---------

> [C]ourt[s] may require . . . administrative officials . . . to give testimony explaining their action. Of course, such inquiry into the mental processes of administrative decisionmakers is usually to be avoided. And where there are administrative findings that were made at the same time as the decision . . . , there must be a strong showing of bad faith or improper behavior before such inquiry may be made.

*Citizens to Pres. Overton Park*, 401 U.S. at 420 (citing *Morgan*, 313 U.S. at 422).

[7]     Presumably, this is why Governor Brown did not argue in the district court that Plaintiffs must show bad faith. *See* Add-99–124.

[8]     Caselaw from this Court's sister circuits is in accord. Take, for instance, the Fifth Circuit's decision in *In re FDIC*, 58 F.3d 1055 (5th Cir. 1995), and its later decision in *In re Paxton*, 60 F.4th 252, 258 (5th Cir. 2023).

In *In re FDIC*, the Fifth Circuit addressed the question that this Court addressed in *In re Department of Education*; that is, when extraordinary circumstances exist to warrant the deposition of a federal agency official. 58 F.3d at 1057 (reviewing order refusing to quash notices of deposition issued to members of the Board of Directors of the FDIC). In that context, as in *In re Department of Education*, the Fifth Circuit held that "a strong showing of bad faith or improper behavior" was required, against based on the limitations on judicial review within the context of the APA. 58 F.3d at 1062.

More recently, in *In re Paxton*, the Fifth Circuit addressed the extraordinary circumstances test in the context of high-level *state* official. 60 F.4th at 258 (reviewing order refusing to quash subpoena issued to state attorney general). The court, citing *In re FDIC*, did not impose a "bad faith or improper behavior" requirement. *See id.*; *see also In re Bryant*, 745 F. App'x 215 (5th Cir. 2018) (per curiam) (no bad-faith requirement imposed with respect to depositions of high-

The separation-of-powers concerns at issue in *In re U.S. Department of Education* likewise distinguish it from the context of depositions of high-level state officials. There, again in the context of an order directing the deposition of a cabinet-level secretary, this Court cautioned that "[c]ourts are not . . . to second-guess policy decisions properly delegated to the executive branch by the legislative branch." 25 F.4th at 699 (citing *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 324 (1994)). "This balance of power [between co-equal branches] is essential to the constitutional design." *Id.* The Court held that the district court's order compelling the deposition of Secretary DeVos "breached the barrier separating one co-equal branch of the federal government from another." *Id.*

On this point, Governor Brown contends that the same separation-of-powers concerns apply "with equal force to state officials," making *In re U.S. Department of Education* applicable here. Petition at 18. But that again is not correct. Long-settled Supreme Court precedent makes clear that separation-of-powers concerns surrounding the balance of power between co-equal branches of the federal government are different from federalism or comity concerns surrounding the balance of power between the federal government and the states. *See, e.g.*, *Clinton*

---

level governor's office staff). Instead, the court applied an extraordinary circumstances test analogous to the test the district court applied here. *See id.* (requiring courts to "consider: (1) the deponent's high-ranking status; (2) the substantive reasons for the deposition; and (3) the potential burden the deposition would impose on the deponent").

*v. Jones*, 520 U.S. 681, 691 n.13 (1997) (noting that "[b]ecause the Supreme

Clause makes federal law 'the supreme Law of the Land,' Art. VI, cl. 2," the

balance of control between a state and a federal official "may implicate concerns

that are quite different from the interbranch separation of powers . . . ."); *see also*

*In re Univ. of Mich.*, 963 F.3d 460, 465–66 (6th Cir. 2019) (separately analyzing

the two consistently with *Clinton*); *L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 703

(9th Cir. 1992) (same).

To be sure, the Supreme Court has held that "[j]ust as the separation and

independence of the coordinate branches of the Federal Government serve to

prevent the accumulation of excessive power in any one branch, a healthy balance

of power between the States and the Federal Government will reduce the risk of

tyranny and abuse from either front." *Gregory v. Ashcroft*, 501 U.S. 452, 458

(1991). But *that* balance of sovereign power "was adopted by the Framers to

ensure the protection of 'our fundamental liberties.' " *Atascadero State Hosp. v.*

*Scanlon*, 473 U.S. 234, 242 (1985) (quoting *Garcia v. San Antonio Metro. Trans.*

*Auth.*, 469 U.S. 528, 572 (1985) (Powell, J., dissenting)). Where, as here, those

very fundamental liberties are claimed to have been infringed by a state official,

and where Congress expressly has authorized such claims under federal law, *see* 42

U.S.C. § 1983, the federal courts have the power to fully adjudicate them. There are no federalism concerns in their doing so.[9]

This Court's decision in *In re U.S. Department of Education* simply does not resolve the question the district court addressed in this case—that is, when extraordinary circumstances permit the deposition of a high-level state or local official. In fact, the context in which *In re U.S. Department of Education* arose was *so* meaningfully distinct from the context here that Governor Brown *did not even argue* in the district court that any bad faith requirement or separation-of-powers principles applied. In the absence of authority on point from this Court, the district court did not clearly err. *See In re Swift*, 830 F.3d at 917; *In re Morgan*, 506 F.3d 705, 713 (9th Cir. 2007) (declining to find clear error where there was no prior Ninth Circuit authority on point).

---

[9]     The Sixth Circuit suggested otherwise in *In re Office of the Utah Attorney General*, 56 F.4th at 1261–62, but did so simply to hold that extraordinary circumstances must exist before a state or local official may be ordered to sit for a deposition. Plaintiffs do not dispute that proposition. In *Office of the Utah Attorney General*, the district court had applied only the broad relevance standard under Rule 26 to permit a deposition of the Utah Attorney General. *Id.* at 1261. The Sixth Circuit reversed, concluding that that the appropriate standard is akin, again, to the very standard the district court applied here. *See id.* at 1264 (a party seeking the deposition of a high-ranking state official must show: (1) the official has first-hand knowledge related to the claim, (2) the testimony will likely lead to the discovery of admissible evidence, (3) the deposition is essential to the party's case, and (4) the information cannot be obtained from an alternative source).

**B.** **The district court applied the extraordinary circumstances test consistently with other circuits that have applied it in this context.**

In the absence of authority from this Court, the district court applied the extraordinary circumstances test consistently with virtually every other circuit to have applied the test in this context. In this respect, there was also no clear error sufficient to warrant reversal.

Circuit courts across the country agree that high-ranking state or local officials should not, absent extraordinary circumstances, be called to testify or be deposed on matters concerning actions taken in their official capacities. *See, e.g.*, *In re Paxton*, 60 F.4th at 258 (5th Cir.) (state attorney general); *In re Office of the Utah Att'y Gen.*, 56 F.4th at 1259–60 (10th Cir.) (state attorney general); *Lederman*, 731 F.3d at 203 (2d Cir.) (mayor); *Bogan*, 489 F.3d at 423 (1st Cir.) (mayor); *Stagman*, 176 F.3d at 994–95 (7th Cir.) (state attorney general).[10]

Generally speaking, those courts have held that extraordinary circumstances permit the deposition of a high-ranking state or local officials where the official has first-hand knowledge of the claim, where the information sought is relevant or

---

[10] The "extraordinary circumstances" test has its genesis in *United States v. Morgan*, which involved a deposition of the Secretary of Agriculture. 313 U.S. at 422. In *Morgan*, the Supreme Court observed that a deposition of the Secretary— which, in the Court's view, "ha[d] a quality resembling that of a judicial proceeding" because the Secretary had presided over the agency action being reviewed—should be discouraged because "it [is] not the function of the court to probe the mental processes of the Secretary." 313 U.S. at 422.

essential to the case, and where the information sought cannot reasonably be

obtained from other sources. *See In re Office of the Utah Att'y Gen.*, 56 F.4th at

1264 (party "must show: (1) the official has first-hand knowledge related to the

claim being litigated; (2) the testimony will likely lead to the discovery of

admissible evidence; (3) the deposition is essential to the party's case; and (4) the

information cannot be obtained from an alternative source or via less burdensome

means." (cleaned up)); *Lederman*, 731 F.3d at 203 (extraordinary circumstances do

not exist where party did not identify with particularity the information sought and

did not contend that the official had first-hand knowledge of the information or that

the relevant information could not be obtained elsewhere); *Bogan*, 489 F.3d at 423

(public official may be deposed where official has first-hand knowledge of the

claim litigated and where other persons cannot provide the necessary information);

*see also In re Paxton*, 60 F.4th at 258 (before ordering deposition, court must

consider the deponent's status, the substantive reasons for the deposition, and the

burden it would impose on the deponent; key aspect of the analysis is whether

information is available from other sources) (citing *In re FDIC*, 58 F.3d 1055)).

These cases are grounded on the premise that "[h]igh-ranking government officials

. . . have 'greater duties and time constraints than other witnesses.' " *Lederman*,

731 F.3d at 203 (quoting *In re United States (Kessler),* 985 F.2d 510, 512 (11th

Cir. 1993)).  "If courts did not limit these depositions, such officials would spend

'an inordinate amount of time tending to pending litigation." *Id.* (citing *Bogan*, 489 F.3d at 423).

District courts, applying those authorities, have followed suit, including with respect to state governors. *Freedom From Religion Found., Inc. v. Abbott ("FFRF")*, 2017 WL 4582804, at *10–11 (W.D. Tex. Oct. 13, 2017) (governor) (applying *In re FDIC* but holding that allegations of improper motive sufficient to warrant deposition); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1048–50 (E.D. Cal. 2010) (applying *Bogan*) (governor);[11] *Coleman v. Schwarzenegger*, 2008 WL 4300437, at *3–5 (E.D. Cal. Sept. 15, 2008) (governor) (same; relying on *Bagley* and *Paiewonsky*, *infra*, as a basis for requirement to allege improper motive); *Buono v. City of New York*, 249 F.R.D. 469, 470 n.2 (D.N.J. 2008) (mayor) (applying *Bogan*); *Bagley v. Blagojevich*, 486 F. Supp. 2d 786, 789 (C.D. Ill. 2007) (governor) (citing *Stagman*); *see also Givens v. Newsom*, 2021 WL 65878, at *4 (E.D. Cal. Jan. 7, 2021) (governor) (applying *Thomas*); *Victory v. Pataki*, 2008 WL 4500202, at *2 (W.D.N.Y. Sept. 30, 2008) (governor) (allowing deposition based on personal involvement in actions giving rise to claims); *Virgo Corp. v. Paiewonsky*, 39 F.R.D. 9, 11 (U.S.V.I. 1966) (same) (Governor of Virgin Islands).

---

[11] In *Thomas*, the Eastern District of California also held, in the context of other the parties' other discovery disputes, that a "strong showing of bad faith or improper behavior" did not apply in that case because the plaintiff there did "not challenge the substantive merits of an agency decision." 715 F. Supp. 2d at 1023, 1025 (citing *Citizens to Pres. Overton Park*, 401 U.S. at 420).

The district court here, relying on *all* of these relevant authorities, including *In re U.S. Department of Education*, held that, for Plaintiffs to satisfy their burden, they must (1) allege or establish that Governor Brown acted in bad faith or with an improper motive, (2) establish that the information sought is essential to the case, and (3) establish that the information sought was not reasonably available from other sources. Add-7–10, 12 (citing *Givens*, 2021 WL 65878, at *4; *Coleman*, 2008 WL 4300437, at *3–4; *Victory*, 2008 WL 4500202, at *2; *Bagley*, 486 F. Supp. 2d at 788–90; *FFRF*, 2017 WL 4582804, at *11 & n.24; *Fair Fight Action, Inc. v. Raffensberger*, 333 F.R.D. 689, 698 (N.D. Ga. 2019)). This was correct. In light of the authorities described above, it certainly was not clear error.

### C. The district court correctly found that Governor Brown acted with an improper motive and that her motives are essential to Plaintiffs' Eighth Amendment claim against her.

To the extent that "improper motive" is an element of the extraordinary circumstances test in this case, the district court correctly applied it. Again, this Court has not held that any bad faith standard applies in this context, and the Court's decision in *In re U.S. Department of Education* does not impose one. Yet in an abundance of caution, and consistent with (or above) the standard applied by virtually every other authority on point, the district court found that an allegation of "improper motive" was required to compel a governor's deposition. Add-8–9. The district court was correct.

Plaintiffs allege in this case that Governor Brown was deliberately indifferent to the health and safety of AICs in ODOC custody when she acted (or failed to act) at the height of the COVID-19 pandemic in ways that limited the ability of those AICs to socially distance in the prison setting. ECF 282. Those actions and inactions included, among others, her decisions to close two ODOC facilities and certain decisions she made relating to options for reducing Oregon's prison population. Add-14.

Precedent from this Court and the Supreme Court addressing the deliberate indifference standard is clear and well settled. A state official acts with "deliberate indifference" when the official "knows of and disregards an excess risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Toguchi*, 391 F.3d at 1057 (same). Deliberate indifference to inmate health and safety violates the Eighth Amendment. *Farmer*, 511 U.S. at 837. By alleging that she acted with deliberate indifference, Plaintiffs allege that Governor Brown acted with an improper motive in her conduct giving rise to this case. The district court did not clearly err in holding otherwise. *Cf. In re Swift*, 830 F.3d at 916 (requiring deference to the district court's conclusions).

Nor did the district court err in concluding that the information Plaintiffs seek through her deposition is essential to their claims. Governor Brown is a named defendant in this action, and Plaintiffs contend that, through her actions and

24

inactions in reducing the space available in prison and implementing a population reduction plan that was designed to fail, all in the face of the obvious health and safety risks posed to those living in congregate settings, she violated the Eighth Amendment. Her reasons for acting or failing to act are essential to Plaintiffs' claims against her. The district court did not clearly err in holding otherwise.

One additional point is worth mentioning here. Governor Brown, in her petition, seeks to have this Court reach issues *well* outside the scope of those properly before this Court. *See In re Sussex*, 781 F.3d 1056, 1070 (9th Cir. 2015) ("A writ of mandamus is an extraordinary or drastic remedy, used only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." (internal quotation marks omitted)). She asks this Court, for instance, to rule that the information that Plaintiffs seek "is not actionable under the Eighth Amendment" because "gubernatorial decisions on clemency grants and facility closures do not implicate, much less violate, the Eighth Amendment's prohibition on cruel and unusual punishment." Petition at 27. Not only has the district court *twice* rejected that argument, *see* ECF 350, 463, but it is also an argument on the merits of Plaintiffs' underlying claims. To the extent that the district court erred in its prior rulings by rejecting Governor Brown's argument, those rulings are not the proper subject of mandamus. They may effectively be remedied on appeal from a final judgment.

25

Governor Brown also asks this Court to apply a standard higher than deliberate indifference to the claims against her on the ground that her actions were taken in exigent circumstances. Petition at 26–27. That request is, frankly, remarkable, and should be denied for three independent reasons. First, Governor Brown has *never before* made that argument in the district court, so she has waived it and cannot make it here. Second, it is a merits argument in which Governor Brown essentially asks this Court to reverse practically every other order the district court has entered in this case. *See* ECF 149 (applying a deliberate indifference standard to deny partial summary judgment); ECF 272 (same; denying motions to dismiss and strike); ECF 377 (same; order certifying class). That would be improper. Third, Governor Brown is wrong on the law. The actions and inactions giving rise to this case were not made in exigent circumstances; rather, they were made over the course of months and years, as dozens of AICs contracted the virus and died in Defendants' care. *See Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (applying higher standard to decisions made in haste and under pressure); *Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000) ("malicious and sadistic" standard applies "[i]n emergency circumstances, such as those that exist during a prison uprising, where prison officials must weigh the competing institutional interests of ensuring the safety of staff, visitors, and inmates, and where life-and-death decisions must be made quickly").

The district court did not clearly err in concluding that Governor Brown acted with an improper motive or in concluding that that motive—including the reasons she took certain actions during the height of the COVID-19 pandemic to limit the ability of AICs to socially distance—are essential to Plaintiffs' Eighth Amendment claims against her.

### D. The district court correctly found that Plaintiffs exhausted less intrusive means of discovery.

The district court also correctly found that Plaintiffs had exhausted less intrusive means of discovery. On this requirement, the record reflects the following:

Over the course of this case, Plaintiffs requested Governor Brown's deposition three different times. Add-3–6. After the second request, in November 2022, the district court issued a protective order barring the deposition while Governor Brown remained in office. Add-5. In its order, the district court noted that Plaintiffs had not "met the burden of demonstrating extraordinary circumstances to justify taking Governor Kate Brown's deposition before the end of her current term" and that "Plaintiffs ha[d] not yet exhausted other less intrusive discovery methods, such as depositing Governor Brown's staff or serving interrogatories." Add-5.

Plaintiffs thereafter propounded interrogatories on Governor Brown and deposed certain of Governor Brown's staff, including her Public Safety Advisor,

her Health Policy Advisor, and her Chief of Staff, Nik Blosser. Add-16. None of those depositions provided Plaintiffs with the information they sought. Add-16; 251–52. None clarified the scope of Governor Brown's understanding of the risks of COVID-19 in the correctional setting or the nature or efficacy of any COVID-19 measure that ODOC had implemented. *Id.* (citing testimony from other witnesses). None answered any of Plaintiffs' questions about the facility closures or Governor Brown's release program. Add-252 (same). And none shed any light on whether Governor Brown had ever considered using alternative space to implement social distancing measures for AICs. *Id.*

Nevertheless, Governor Brown contends that Plaintiffs did not satisfy their burden to exhaust less-intrusive means of discovery because they did not serve interrogatories requesting the information sought and "did not even *try* to depose the chief of staff who served when most of the challenged clemency grants and facility closures took place." Petition at 28–29. Neither argument is persuasive. The interrogatories that Plaintiffs served on Governor Brown sought to obtain as much information as possible within the limits imposed by that discovery device. Charles A. Wright & Arthur R. Miller, 8B *Federal Practice & Procedure* § 2163 (3d ed.); *see also* § 2169 (noting that "interrogatories are of limited utility for

28

inquiring into certain types of subjects").[12]  And Plaintiffs deposed Nik Blosser, the

Chief of Staff who served *when the essential decisions were made*—that is, when

the Governor rejected potential population reduction options, created her

commutation program, and decided to close two ODOC facilities.  Add-16, 96.[13]

Plaintiffs have satisfied their burden to establish that the information sought is not

available from other sources.[14]  The district court did not clearly err in concluding

otherwise.

## II.    In the absence of clear error, the remedy of mandamus is unwarranted.

It is well-established in this Court that "while all the factors need not be

present to issue the writ, the absence of factor three—clear error as a matter of

law—will always defeat a petition for mandamus."  *In re Swift*, 830 F.3d 913, 916

(9th Cir. 2016) (cleaned up); *see also In re Van Dusen*, 654 F.3d 838, 841 (9th Cir.

---

[12]    To the extent that Governor Brown now argues that Plaintiffs should have
served interrogatories containing the very questions they would ask at a deposition,
that is contrary to her position in the district court.  *See* Trans. of Proceedings (May
24, 2023), at 20–21 ("THE COURT: So if Plaintiffs served interrogatories that
listed every question that they intended to ask Governor Brown at a deposition,
would you object to that, or is that something you would be willing to have a
discussion about?  MR. JINDAL: We would object to that.").

[13]    Governor Brown's statement that the "bulk of the challenged actions here
. . . occurred" outside Blosser's tenure as Chief of Staff, *see* Petition at 30, is not
only misleading, but also untrue.  There is no support for it in the record.

[14]    At the same time that they moved to compel Governor Brown's deposition,
Plaintiffs moved to compel the deposition of Kevin Gleim, a Governor's Office
attorney charged with implementing Governor Brown's population reduction
program.  Add-243–46.  The district court granted that motion, *see* ECF 463, but
Mr. Gleim likewise did not provide the information that Plaintiffs seek.

2011) ("[C]lear error as a matter of law . . . is a necessary condition for granting a writ of mandamus.").  That is because the remaining *Bauman* factors "while useful as an analytical framework, seldom yield bright line distinctions."  *Id.*

That is the case here.  Although denial of mandamus will require the Governor to sit for a two-hour deposition, that is hardly a damage or prejudice that warrants extraordinary relief in the absence of clear legal error by the district court. Additionally, many of the arguments that Governor Brown makes in support of her petition are not, in fact, arguments demonstrating clear legal error in the district court's deposition order, but instead are arguments relating directly to the merits of Plaintiffs' underlying claims.  *See* Petition at 19–27.  Those arguments are properly made on direct appeal from a final judgment, not by way of mandamus.  *See Aguilar v. Walgreen Co.*, 47 F.4th 1115, 1123 n.10 (9th Cir. 2022).

## CONCLUSION

For the reasons explained above, Plaintiffs respectfully request that the Court deny the petition for a writ of mandamus.

DATED this 7th day of August, 2023.

SUGERMAN DAHAB

By: s/ Nadia H. Dahab
**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
707 SW Washington St. Ste. 600
Portland, OR 97205

*Attorneys for Real-Parties-In-Interest-Plaintiffs'*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rules 21-3 and 28-2.6, undersigned counsel is aware of two consolidated appeals pending in this Court that are related to this petition: *Maney v. Brown*, No. 22-35218 (9th Cir.); and *Maney v. Allen*, No. 22-35219 (9th Cir.). Both arise out of the same case in the district court.

SUGERMAN DAHAB

By: s/ Nadia H. Dahab

**Nadia H. Dahab**, OSB No. 125630
707 SW Washington St. Ste. 600
Portland, OR 97205

32

**CERTIFICATE OF COMPLIANCE**

This brief complies with the limit of Federal Rules of Appellate Procedure 21(d)(1) and 32(c)(2), and Ninth Circuit Rules 21-2 and 32-3, because it contains 7767 words and does not exceed 30 pages.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman, 14-point font, a proportionally spaced typeface.

SUGERMAN DAHAB

By: s/ Nadia H. Dahab
**Nadia H. Dahab**, OSB No. 125630
707 SW Washington St. Ste. 600
Portland, OR 97205

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on August 7, 2023, I electronically filed the foregoing

**REAL-PARTIES-IN-INTEREST-PLAINTIFFS' ANSWER TO PETITION**

**FOR A WRIT OF MANDAMUS** with the Clerk of the Court for the United

States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF

system. I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.

Kerry J. Shepard
Molly K. Honoré
R. Kyle Busse
MARKOWITZ HERBOLD PC
1455 SW Broadway Ste. 1900
Portland, OR 97201
kerryshepard@markowitzherbold.com
mollyhonore@markowitzherbold.com
kylebusse@markowitzherbold.com

Denise Gale Fjordbeck
Robert A Koch
OREGON DEPARTMENT OF JUSTICE
1162 State Street NE
Salem, OR 97301
denise.fjordbeck@doj.state.or.us
robert.koch@doj.state.or.us

*Attorneys for Real-Parties-in-Interest-*
*Defendants*

DATED this 7th day of August, 2023.

SUGERMAN DAHAB

By: s/ Nadia H. Dahab
**Nadia H. Dahab**, OSB No. 125630
707 SW Washington St. Ste. 600
Portland, OR 97205