**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 9 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: STATE OF OREGON, _____ STATE OF OREGON, Petitioner, v. UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON, EUGENE, Respondent, PAUL JULIAN MANEY; GARY CLIFT; GEORGE W. NULPH; THERON D. HALL; DAVID HART; SHERYL LYNN SUBLET; FELISHIA RAMIREZ, personal representative for the Estate of Juan Tristan, individually, on behalf of a class of other similarly situated, Plaintiffs- Real Parties in Interest, PATRICK ALLEN, Defendant- Real Party in Interest. | No. 23-70127 D.C. No. 6:20-cv-00570-SB MEMORANDUM* |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Petition for Writ of Mandamus

Argued and Submitted November 14, 2023
Seattle, Washington

Before: McKEOWN and GOULD, Circuit Judges, and BAKER,[**] International Trade Judge.
Dissent by Judge BAKER.

Plaintiffs, a class of prisoners who contracted COVID-19 while incarcerated, sued Defendants, the State of Oregon and individual state officials, claiming that the State unnecessarily exposed them to a high risk of contracting the disease. Among the individual defendants named was former Governor Kate Brown. During discovery, the district court granted Plaintiffs' motion to compel the deposition of Governor Brown.

Defendants petition this Court for a writ of mandamus seeking to quash the order compelling Governor Brown's deposition. Defendants claim that the district court committed clear error in its application of *In re U.S. Department of Education*'s three-element test for determining whether depositions of high-level officials should be permitted. *In re U.S. Dep't of Educ.*, 25 F.4th 692 (9th Cir. 2022). We disagree and deny the petition.

1. A writ of mandamus quashing a district court's order is an "extraordinary [and] drastic remedy," *In re Sussex*, 781 F.3d 1065, 1070 (9th Cir. 2015),

---

[**] The Honorable M. Miller Baker, Judge for the United States Court of International Trade, sitting by designation.

2

and usually requires at a minimum that the district court committed clear error, *In re Mersho*, 6 F.4th 891, 898 (9th Cir. 2021). "The clear error standard is significantly deferential and is not met unless the reviewing court is left with a 'definite and firm conviction that a mistake has been committed.'" *Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 708 (9th Cir. 2009) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993)).

2. The district court did not commit clear error on the first element of the test outlined in *In re U.S. Department of Education*. That element requires bad faith on the part of the agency or high-level official a party seeks to depose.

    a. The district court found that Plaintiffs had credibly alleged that Governor Brown acted in bad faith and concluded that this satisfied the first element of the test. Defendants argue that the district court was required to make a factual finding of bad faith, rather than relying on Plaintiffs' allegations.

    b. Such a requirement was not articulated in *In re U.S. Department of Education*, *see* 25 F.4th at 702-03, and we have not announced a specific evidentiary standard for the bad-faith element in any other decision. A district court's ruling "usually cannot be clearly erroneous if there is no Ninth Circuit authority on point, or the

3

question has not been addressed by any circuit court." *In re Mersho*, 6 F.4th at 898. Because there was no clear precedent instructing the district court to make a factual finding of bad faith before allowing the deposition of Governor Brown, the district court did not commit clear error in relying on Plaintiffs' credible allegations to find this element satisfied.

3. The district court did not commit clear error on the second element of the test, which requires that the information sought from a high-level official be "essential to the case." *In re U.S. Dep't of Educ.*, 25 F.4th at 702. Defendants argue that the district court erred in finding this element satisfied, because it should have determined that Plaintiffs' claims were meritless. This alleged error is not appropriate for mandamus review. A writ of mandamus is reserved for issues "not correctable on appeal." *In re Sussex*, 781 F.3d at 1075. Defendants' assertion that Plaintiffs have failed to state a claim against Governor Brown is correctable on appeal.

4. The district court did not commit clear error on the third element of the test, which requires "[that] the information sought from [a high-level official] cannot be obtained in any other way." *In re U.S. Dep't of Educ.*, 25 F.4th at 702.

    a. The district court had denied Plaintiffs' first motion to compel the

4

deposition of Governor Brown, made earlier in discovery, and directed them to exhaust other means of finding the information they sought. Only after Plaintiffs exhausted these other means and returned to the court with a renewed motion did the court agree to compel the deposition.

b. Defendants argue that the court's decision was erroneous because Plaintiffs failed to pursue some potential sources of information. Defendants' challenge is not to any legal error but to the factual findings of the district court during discovery, which are entitled to deference.

c. Justifying a writ of mandamus is "especially difficult in the discovery context," *In re Walsh*, 15 F.4th 1005, 1010 (9th Cir. 2021) (citation and internal quotation marks omitted), to the extent that we have described it as generally "unavailable," *In re Perez*, 749 F.3d 849, 854 (9th Cir. 2014). Defendants have not pointed to any egregious error by the district court that would overcome the exceedingly high bar for a writ of mandamus in the discovery context.

**PETITION DENIED.**

*State of Oregon v. U.S. Dist. Ct.*, No. 23-70127

FILED

JAN 9 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BAKER, Judge, dissenting:

"Energy in the executive is a leading character in the definition of good government." *The Federalist No. 70* (Hamilton) (J. Cooke ed. 1961). Because, among other reasons, our decision today could tend to enfeeble state governments by exposing their chief executives to the *in terrorem* prospect of being deposed in civil litigation arising out of the performance of their official duties, I respectfully dissent from the denial of former Oregon Governor Kate Brown's petition for a writ of mandamus. I would grant the petition and direct the district court to quash her deposition.

I

Like the President and other state chief executives, Governor Brown exercised various emergency powers in responding to the Covid-19 crisis. Some of her decisions related to prisoners in state custody.[1] Less than a month after she invoked this authority in March 2020, Plaintiffs—who were among such prisoners—brought this 42 U.S.C. § 1983 class action against her and a host of lesser officials in their personal and official capacities. The operative Sixth Amended Complaint alleges that Defendants' various coronavirus-related responses pertaining to prisoners violated the Eighth Amendment's prohibition of cruel and unusual punishment and were tortious under Oregon law. Dist. Ct. Dkt. No. 282.

---

[1] Governor Brown's actions related to prisoners and coronavirus were further complicated by concurrent historic wildfires that threatened various state prisons.

Plaintiffs seek to depose now-former Governor Brown on "decisions relating to early release or commutations of the sentences for [prisoners] and . . . to the closure of certain [prisons]," matters not actually raised in their complaint. Governor Brown moved for a protective order, arguing that Plaintiffs had not made the showing necessary to depose high-ranking officials.

Applying our three-part "exceptional circumstances" test for justifying the deposition of a federal cabinet secretary, *see In re U.S. Dep't of Educ.*, 25 F.4th 692, 702 (9th Cir. 2022),[2] the district court denied the protective order. As to the first element of that test, the district court concluded that "Plaintiffs' *allegations* that Governor Brown . . . acted with deliberate indifference to the health and safety of [prisoners] during the COVID-19 pandemic [are] sufficient to meet the threshold requirement of either agency or individual bad faith or wrongful conduct." (Emphasis added.) As to the second, the court found that the former governor's "testimony is both relevant and necessary, and therefore essential, to proving [Plaintiffs'] claims" that she "and the other defendants knew of, but disregarded, an excessive

---

[2] Plaintiffs dispute the application of this test to a state governor. In my view, the district court correctly applied the test, which the majority also applies, because the federalism concerns implicated by requiring a state chief executive to sit for a deposition in federal civil litigation are analogous to, and at least as weighty as, the separation of powers and comity considerations that animated our decision in *Department of Education*. See 25 F.4th at 700–01; *cf. Younger v. Harris*, 401 U.S. 37, 43–45 (1971).

risk to [prisoners'] health and safety." Finally, the court determined that because Plaintiffs had "exhausted less intrusive discovery mechanisms," they had "established that the information they seek from Governor Brown is not otherwise available."

## II

We weigh five factors in determining whether to grant a writ of mandamus:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.) (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.

*Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir. 1977) (citations omitted).

The most important factor is "clear error as a matter of law," and a writ is not normally granted unless this factor is present. *In re Mersho*, 6 F.4th 891, 898 (9th Cir. 2021). "The clear error standard is significantly deferential and is not met unless the reviewing court is left with a 'definite and firm conviction that a mistake has been committed.' " *Cohen v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 586 F.3d 703, 708 (9th Cir. 2009) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993)).

A district court's ruling "usually cannot be clearly erroneous if there is no Ninth Circuit authority on point, or the question has not been addressed by any

3

circuit court," unless "the plain text of the statute prohibits the course taken by the district court." *Mersho*, 6 F.4th at 898 (cleaned up). That said, "[m]andamus review is at bottom discretionary." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.—N. Dist. (San Jose)*, 187 F.3d 1096, 1099 (9th Cir. 1999) (cleaned up). We are "neither compelled to grant the writ when all five factors are present, nor prohibited from doing so when fewer than five, or only one, are present." *In re Kirkland*, 75 F.4th 1030, 1041 (9th Cir. 2023) (cleaned up) (quoting *In re Sussex*, 781 F.3d 1065, 1071 (9th Cir. 2015)). And because "law is an instrument of governance rather than a hymn to intellectual beauty," *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837 (1989) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain R.*, 854 F.2d 916, 925 (7th Cir. 1988) (en banc) (Posner, J.), *rev'd*, 490 U.S. 826 (1989)), in my view we should give "some consideration . . . to practicalities" as we weigh these discretionary factors, *id.*—especially, when, as here, they involve sensitive issues of "Our Federalism," *cf. Younger*, 401 U.S. at 44, and actual governance by a state chief executive, not merely an ordinary dispute between private litigants.

### III

My colleagues conclude that the district court did not commit clear error as to the first element of the *Department of Education* test in relying on Plaintiffs' allegations of bad faith because that case does not expressly require "a factual finding of

bad faith" and "we have not announced a specific evidentiary standard for the bad-faith element in any other decision." Mem. at 3.

Although *Department of Education* does not expressly mandate a finding of bad faith, it implicitly does so. We said that "[b]ad faith *is* a requirement." 25 F.4th at 703 (emphasis added). More than that, the district court in that case *found* bad faith, and we saw "no reason to question [that] *finding*." *Id.* (emphasis added). The majority's reading of *Department of Education* unfortunately neuters this prerequisite by allowing it to be satisfied by a mere allegation. In my view, the district court committed a clear legal error by denying Governor Brown's motion for a protective order without first *finding* bad faith.[3]

The majority further concludes that the district court did not commit clear error as to the second element of the test, "which requires that the information sought from a high-level official be 'essential to the case.' " Mem. at 4. Governor Brown argues that this requirement is not satisfied because as to the topics of her proposed deposition—decisions pertaining to clemency and prison closures—Plaintiffs fail to

---

[3] In allowing the deposition of Governor Brown to go forward based solely on Plaintiffs' allegations of bad faith, our decision today conflicts with at least two of our sister circuits. *See In re F.D.I.C.*, 58 F.3d 1055, 1062 (5th Cir. 1995) (holding that mere "allegations of misconduct" are not enough to justify deposing a senior agency official); *In re United States*, 197 F.3d 310, 314 (8th Cir. 1999) ("Allegations that a high government official acted improperly are insufficient to justify the subpoena of that official unless the party seeking discovery provides compelling evidence of improper behavior . . . .") (citing *In re F.D.I.C.*, 58 F.3d at 1062).

5

state a claim for relief as a matter of law. My colleagues contend that because "Defendants' assertion that Plaintiffs have failed to state a claim . . . is correctable on appeal," *id.*, that question is "not appropriate for mandamus review." *Id.*

But once Governor Brown is deposed, the harm that her mandamus petition seeks to prevent cannot be undone. *See Dep't of Educ.*, 25 F.4th at 705 (explaining that the harm "is the intrusion of the deposition itself," which "is not correctable on appeal").[4] Thus, for that reason I agree with her that it is appropriate on mandamus review for us to decide whether Plaintiffs' complaint states a claim at least as to the issues for which her deposition is requested. As she argues, if no such cognizable claim is stated, the information sought "is not apposite, much less essential, to their Eighth Amendment claim." *Cf. In re United States*, 197 F.3d at 314 (holding that

---

[4] Contrary to the district court's suggestion that "the rationale behind the deposition privilege applies with less force" after a high official has left office, whether such an official is still in office when a deposition is sought should make no difference. *Cf. Dep't of Educ.*, 25 F.4th at 705 (observing that the threat of "overwhelming and unnecessary discovery could also discourage" high officials from taking office "or leaving office when there is controversy"). Absent exceptional circumstances, high officials should be able to perform their official duties without concern for later having to sit through depositions in civil litigation. Such officials answer to the voters (either directly, as with Governor Brown, or indirectly, as with cabinet officers appointed by the President), not the plaintiffs' bar.

6

before a high-ranking official can be deposed, a plaintiff must "show an entitlement to the relief sought in the case").[5]

The majority finally concludes that the district court did not commit clear error on the third element of the *Department of Education* test, "which requires 'that the information sought from a high-level official cannot be obtained in any other

---

[5] In my view, Plaintiffs fail to state any such claim for relief under the Eighth Amendment as to Governor Brown's prison closure and clemency decisions, as their complaint does not even allege that those decisions are constitutional violations. *Cf. N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983) (stating that in the Rule 12(b)(6) context, "[w]e need not reach issues for which there is no foundation in the complaint").

But even if the complaint contained the necessary foundation, those claims would still fail. That the governor merely approved prison closures falls far short of demonstrating that such decisions were "sure or very likely to cause serious illness and needless suffering." *Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918, 934 (9th Cir. 2021) (cleaned up); *see also Mitchell v. Cuomo*, 748 F.2d 804, 808 (2d Cir. 1984) (Friendly, J., dissenting) ("[F]ederal judges should avoid intruding into state prison administration unless clear-cut violations of the Eighth Amendment [are] demonstrated.") (citing *Rhodes v. Chapman*, 452 U.S. 337, 348, 349–50, 351–52 (1981)).

Plaintiffs' challenge to Governor Brown's clemency decisions is even more attenuated, as "pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981). Those decisions are likely nonjusticiable political questions, for under the Oregon Constitution the governor's clemency "power is plenary—historically indistinguishable from the powers of clemency of the President under the United States Constitution, and the powers of the monarch at English common law." *Marteeny v. Brown*, 517 P.3d 343, 367–68 (Or. App. 2022), *review denied*, 518 P.3d 129 (Or. 2022); *see Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012) ("[A] controversy involves a political question where there is a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it.") (cleaned up).

7

way.'" Mem. at 4 (cleaned up and quoting 25 F.4th at 702). My colleagues reason that "Defendants' challenge is not to any legal error but to the factual findings of the district court during discovery" and that they "have not pointed to any egregious error by the district court that would overcome the exceedingly high bar for a writ of mandamus in the discovery context." *Id*. at 5.

I acknowledge that we must accord deference to the district court's factual finding. But before a high-ranking federal or state official can be deposed, "[e]xhaustion of all reasonable alternative sources *is required*." *Dep't of Educ.*, 25 F.4th at 704 (emphasis added). The district court found that because Plaintiffs had issued interrogatories and deposed several staff members, they had "exhausted less intrusive discovery mechanisms." It is undisputed, however, that Plaintiffs never issued interrogatories on the clemency or facility-closure decisions on which they now seek to depose Governor Brown. *Cf. Dep't of Educ.*, 25 F.4th at 704 (exhaustion was not satisfied because plaintiffs "did not use all of their interrogatories"). Nor did they seek to depose the person who served as her chief of staff during at least some, if not most, of the relevant time.[6] Before the district court took the drastic step of

---

[6] Plaintiffs deposed Nik Blosser, Governor Brown's chief of staff until October 2020, but made no attempt to depose his successor (who served for the rest of the Governor's term), even though clemency criteria were revised in 2021, most clemency grants occurred from January 2021 onward, and the first prison facility closure did not occur until July 2021. Plaintiffs' asserted harm spans from February 1, 2020, to May 31, 2022.

compelling the Governor's deposition, it should have required Plaintiffs to first exhaust these steps.

IV

Finally, in my view Governor Brown has not only demonstrated that the district court committed a clear error of law. She has also established at least two other *Bauman* factors. If her deposition goes forward, she "has no other adequate means, such as a direct appeal, to attain the relief . . . she desires," and she "will be damaged or prejudiced in a way not correctable on appeal." *Bauman*, 557 F.2d at 654.

Because discretionary mandamus relief is highly contextual, those two factors standing alone warrant granting the writ even if, as my colleagues conclude, the district court did not commit a clear error of law. *Cf. In re Kirkland*, 75 F.4th at 1041 (cleaned up) (noting that we are not prohibited from granting the writ "when fewer than five [factors], or only one, are present") (quoting *In re Sussex*, 781 F.3d at 1071). Serving as a state governor—especially during a time of crisis such as the coronavirus epidemic—is a grave responsibility, and we should not unnecessarily add to the burden by exposing chief executives to the prospect of being dragged through depositions to answer questions about their official decisions.

\*   \*   \*

In performing their official duties, federal cabinet officers and state governors must make innumerable decisions that inevitably give rise to civil lawsuits.[7] Absent truly extraordinary circumstances, both the public interest and the Constitution's structural principles dictate that they should be able to make those decisions without fear of having to later explain their thinking in depositions in federal court. Our decision today allows the deposition of such officials on the meager basis of a complaint's allegation of bad faith and even where, as here, the district court erroneously concludes that the plaintiffs have stated a cognizable claim for relief as to the actual issues for which the deposition is sought. I respectfully dissent.

---

[7] According to her Rule 28(j) submission, for instance, Governor Brown was sued 115 times during her tenure as governor.

10