# In the United States Court of Appeals for the Ninth Circuit

In re: STATE OF OREGON,
*Petitioner*,

*v.*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
OREGON, EUGENE,
*Respondent*,

PAUL JULIAN MANEY; GARY CLIFT; GEORGE W. NULPH;
THERON D. HALL; DAVID HART; SHERYL LYNN SUBLET;
FELISHIA RAMIREZ, personal representative for the Estate of Juan
Tristan, individually on behalf of a class of other similarly situated,
*Plaintiffs – Real Parties in Interest*,

PATRICK ALLEN,
*Defendant – Real Party in Interest*.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF OREGON

## BRIEF OF THE NATIONAL GOVERNORS ASSOCIATION AS *AMICUS CURIAE* IN SUPPORT OF PANEL REHEARING OR REHEARING EN BANC

JENNIFER L. MASCOTT
R. TRENT MCCOTTER
  *Counsel of Record*
Separation of Powers Clinic
Gray Center for the Study of the
  Administrative State
Antonin Scalia Law School
George Mason University
3301 Fairfax Dr., Suite 430
Arlington, VA 22201
(202) 706-5488
rmccotte@gmu.edu

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* the National Governors Association certifies that it has no parent corporation nor does any publicly held corporation own 10% or more of its stock.

March 4, 2024

/s/ R. Trent McCotter
R. Trent McCotter
*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................... iii

IDENTITY AND INTEREST OF THE *AMICUS CURIAE*......................1

SUMMARY OF THE ARGUMENT .........................................................2

   I.    Mere Allegations of Bad Faith Are Necessarily Insufficient to Overcome the Historically Grounded Presumption of Regularity That High-Ranking Officials Act in Good Faith.......3

   II.   This Court Has Opened the Door to Widespread Depositions of High-Level State Officials .................9

   III.  The Majority Opinion Ignored Half the Test for Whether On-Point Circuit Case Law Exists .................13

CONCLUSION........................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amawi v. Paxton,*
  956 F.3d 816 (5th Cir. 2020)....................................................7

*Brach v. Newsom,*
  38 F.4th 6 (9th Cir. 2022) ......................................................7

*Burt v. Titlow,*
  571 U.S. 12 (2013) ..................................................................7

*Clark v. Governor of New Jersey,*
  53 F.4th 769 (3d Cir. 2022) ...................................................7

*Dep't of Com. v. New York,*
  139 S. Ct. 2551 (2019) ........................................................5, 6

*In re FDIC,*
  58 F.3d 1055 (5th Cir. 1995)................................................14

*In re Grice,*
  974 F.3d 950 (9th Cir. 2020)..........................................13, 14

*Lee v. City of L.A.,*
  908 F.3d 1175 (9th Cir. 2018)..............................................12

*Medhekar v. U.S. Dist. Ct. for the N. Dist. of Cal.,*
  99 F.3d 325 (9th Cir. 1996) ..................................................13

*In re Mersho,*
  6 F.4th 891 (9th Cir. 2021)...................................................13

*Nat'l Archives & Recs. Admin. v. Favish,*
  541 U.S. 157 (2004) ................................................................4

*In re Off. of the Utah Att'y Gen.,*
  56 F.4th 1254 (10th Cir. 2022)...........................................5, 8

*Slavens v. United States,*
   196 U.S. 229 (1905) ...............................................................4

*Stagman v. Ryan,*
   176 F.3d 986 (7th Cir. 1999)............................................12

*In re U.S. Dep't of Educ.,*
   25 F.4th 692 (9th Cir. 2022) ................................5, 6, 12, 13

*In re United States,*
   197 F.3d 310 (8th Cir. 1999)............................................14

*United States v. Armstrong,*
   517 U.S. 456 (1996) ...............................................................5

*United States v. Chemical Foundation, Inc.,*
   272 U.S. 1 (1926) ...................................................................4

*United States v. Morgan,*
   313 U.S. 409 (1941) ...............................................................5

## Constitution

U.S. Const. art. VI, cl. 3 ...........................................................5

## Other Authorities

15 A.L.R. Fed 3d Art. 5 (2016) ..............................................12

Fed. R. Civ. P. 26 ......................................................................8

# IDENTITY AND INTEREST OF THE *AMICUS CURIAE*[1]

Founded in 1908, the National Governors Association (NGA) is the collective voice and membership organization representing the governors of the nation's 55 states, territories, and commonwealths. NGA is bipartisan, with its Chair alternating between Republicans and Democrats. Further, the Chair and Vice Chair always represent different parties, and the party of the governor holding the Chair has a minority of positions on the bipartisan Executive Committee. This ensures that NGA's actions obtain bipartisan support.

Our nation's governors are dedicated to leading their states and territories to find solutions that improve lives and protect the health, safety, and welfare of their citizens. Through NGA, governors identify priority issues and deal with matters of public policy and governance at the state, national and global levels.

---

[1] All parties consent to the filing of this brief. No counsel for any party has authored this brief in whole or in part, and no entity or person, aside from *amicus curiae's* counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

## SUMMARY OF THE ARGUMENT

Because of its strongly bipartisan mission, *amicus* the National Governors Association (NGA) rarely weighs in on pending litigation. In fact, more than four years have passed since it last filed an *amicus* brief. The panel opinion in this case, however, raises such significant concerns for the institutional integrity of state governorships that NGA respectfully submits this brief for the Court's consideration and urges it to grant panel or en banc rehearing.

The panel majority opinion disregarded binding precedent that strongly presumes governors act in good faith—a presumption that cannot be overcome by mere *allegations*. And if allowed to stand, the opinion will raise serious problems for federalism and the effective operation of state governments. The governors of this Circuit, like those around the country, are routinely named as defendants in *hundreds* of lawsuits, and under the panel opinion they would face the prospect of constantly sitting for depositions while in office and even afterwards. The panel opinion here will encourage plaintiffs to seek depositions of governors, potentially forcing states to choose between yielding valuable executive time to tedious depositions, or making concessions or even

settling cases to avoid them. That is no way to run a state—or a judicial system.

## ARGUMENT

### I. Mere Allegations of Bad Faith Are Necessarily Insufficient to Overcome the Historically Grounded Presumption of Regularity That High-Ranking Officials Act in Good Faith.

When addressing the "exceptional circumstances" test for depositions of high-level government officials, the majority opinion declined to find clear error in the district court's holding that a mere *allegation* of bad faith was sufficient to satisfy the "bad faith" element. Op.3–4. The majority did so by concluding that there was no "clear" Ninth Circuit "precedent instructing the district court to make a factual finding of bad faith before allowing the deposition of Governor Brown." *Id.*

That decision contravened binding case law holding that high-level government officials are presumed to act in good faith. Because that is the default presumption, it cannot be overcome by mere allegations. It must be overcome by an actual *showing* of bad faith. The panel declined to require that such a showing be made, however, and that was serious error.

For over a century, the Supreme Court has recognized that, "[i]n the absence of clear evidence to the contrary, courts presume that Government agents have properly discharged their official duties." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004) (cleaned up); *see United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties"); *Slavens v. United States*, 196 U.S. 229, 236 (1905) (holding that "there is every presumption in favor" of concluding the Postmaster General was "acting in good faith," given his "important" position).

The presumption of regularity, and good faith, is premised on the general principles of separation of powers and federalism, in particular the limited role of the judiciary in reviewing and second-guessing decisions made by high-ranking executive officials at the federal and state level. In the context of federal officials, for example, the "presumption reflects respect for a coordinate branch of government whose officers not only take an oath to support the Constitution, as we do, Art. VI, but also are charged with 'faithfully executing' our laws, Art.

II, § 3." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2579–80 (2019) (Thomas, J., joined by Gorsuch and Kavanaugh, JJ., concurring in part and dissenting in part); *see United States v. Armstrong*, 517 U.S. 456, 464 (1996) (same).

This Court's 2022 decision in *In re U.S. Dep't of Educ.*, 25 F.4th 692 (9th Cir. 2022), similarly recognized that the requirement of *showing* bad faith, rather than making mere allegations, "rest[s] on a constitutional foundation," specifically "the maintenance of a proper separation of powers," *id.* at 700 & n.1. "Just as a judge cannot be subjected to such scrutiny, so the integrity of the [executive] process must be equally respected." *Id.* at 700; *see United States v. Morgan*, 313 U.S. 409, 422 (1941).

"[T]he prospect of a federal court ordering the deposition of a high-ranking state official presents similar concerns, because our system not only separates power among branches of the federal government, but also between the state and federal governments." *In re Off. of the Utah Att'y Gen.*, 56 F.4th 1254, 1262 (10th Cir. 2022). Further, like federal jurists and federal executive officials, state governors "take an oath to support the Constitution." *See* U.S. Const. art. VI, cl. 3; *Dep't of Com.*, 139 S. Ct.

at 2579–80 (Thomas, J., joined by Gorsuch and Kavanaugh, JJ., concurring in part and dissenting in part) (noting that the obligation of federal executive officials to uphold the Constitution is part of the grounding for the federal presumption of regularity).

Federal and state executive officials alike, therefore, benefit from longstanding principles supporting a presumption of regularity that elected officials will act with good faith in attempting to carry out their federal or state responsibilities consistent with federal constitutional requirements. *Cf. Dep't of Com.*, 139 S. Ct. at 2579–80 (Thomas, J., joined by Gorsuch and Kavanaugh, JJ., concurring in part and dissenting in part). Indeed, the one thing on which the panel majority and Judge Baker's dissent agreed was that the "exceptional circumstances" test applies equally to a deposition of a state governor and a high-ranking federal official. *See* Op.3–4; Diss.2 n.2 (Baker, J., dissenting).

Accordingly, just as federal courts generally "are not … to second-guess policy decisions properly delegated to the executive branch by the legislative branch," *Dep't of Educ.*, 25 F.4th at 699, separation of powers and federalism principles ensure that federal courts generally do not

second-guess policy decisions properly reserved to *state* officials by the Constitution, either.

Given the analogous considerations when evaluating requests for depositions of high-ranking federal and state officials, it is unsurprising that this Court has held there is "a presumption of good faith" for a governor's actions. *Brach v. Newsom*, 38 F.4th 6, 13 (9th Cir. 2022) (*en banc*). Other circuits agree. *See, e.g., Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020) (acknowledging "the presumption of good faith that we afford government actors," including the "governor"); *Clark v. Governor of New Jersey*, 53 F.4th 769, 778 (3d Cir. 2022) (acknowledging the "presumption of good faith accorded government officials," including the "Governor").

But the panel majority opinion here "turned that presumption" of good faith "on its head." *Burt v. Titlow*, 571 U.S. 12, 23 (2013). "It should go without saying that the absence of evidence cannot overcome" a presumption. *Id.* That is precisely what makes it a presumption in the first place. If the presumption can be overcome simply because the complaint alleges bad faith, it would defeat the purpose of having a

presumption—and again, the presumption here is one founded on the Constitution itself.

The Tenth Circuit has aptly explained how a test allowing high-level State depositions even when "likely essential to establish a full and complete picture of the circumstances" is woefully inadequate to protect state interests. *In re Off. of the Utah Att'y Gen.*, 56 F.4th 1254, 1261 (10th Cir. 2022). The Tenth Circuit held that such a "standard [is] nearly indistinguishable from the general discovery limitations described in Fed. R. Civ. P. 26(b)(1), and therefore insufficient to protect high-ranking officials from spending an inordinate amount of time tending to pending litigation." *Id.* (cleaned up). If the "full and complete picture" test is inadequate, the "mere allegations" test the panel adopted here is a non-starter.

In short, because Governor Brown is presumed to have acted in good faith, mere allegations of bad faith were *necessarily* insufficient to justify deposing her.[2] The panel majority opinion to the contrary conflicts

_____

[2] Indeed, as demonstrated in Part III, *infra*, the uniform view of other circuits is that a mere allegation of bad faith is insufficient to satisfy the exceptional-circumstances test.

with a century of binding precedent on the presumption of good faith, and accordingly rehearing is warranted.

## II.   This Court Has Opened the Door to Widespread Depositions of High-Level State Officials.

The panel majority's opinion's lax interpretation of the exceptional-circumstances test will result in open season on depositions of high-level state officials, yielding serious negative consequences for federalism.

If governors and other high-ranking officials can be hauled into a deposition based on mere *allegations* of bad faith, there will be little time for anything else. That is no way to run a government, especially in our system of federalism, where federal courts are supposed to be reluctant to interfere with and second-guess states' political judgments, let alone expose them to hours of tedious questioning by litigators.

A review of the litigation statistics involving just a sampling of governors in this Circuit demonstrates the stakes and potential consequences of the panel majority opinion's decision in this case:

- *Alaska*: Governor Dunleavy has been named in at least 42 cases between December 3, 2018, and present.

- *Arizona*: Governor Hobbs has been named in at least 31 cases between January 2, 2023, and present.

- **California**: Governor Newsom has been named in at least 441 cases between January 7, 2019, and present.

- **Idaho**: Governor Little has been named in at least 53 cases between January 1, 2019, and present.

- **Nevada:** Governor Lombardo has been named in at least 9 cases between January 2, 2023, and present. Former Governor Sisolak was named in at least 51 cases between January 7, 2019, and January 2, 2023.

- **Oregon**: Former Governor Brown was named in at least 115 lawsuits between February 18, 2015, and January 9, 2023.

- **Washington**: Governor Inslee has been named in at least 166 original lawsuits between January 16, 2013, and present.

Together, that is over 900 cases. If even a small fraction could result in depositions of the governors, there would be little time for anything else.

Further, the underlying allegations in this case are hardly unique: incarcerated individuals suing over COVID restrictions. NGA's own statistics reveal that just between March 2020 and May 2021, over 400 lawsuits were filed against governors in at least 50 states and territories

challenging executive actions taken by governors in response to COVID-19.

During the COVID-19 pandemic, every governor declared some type of emergency or disaster. The pandemic demanded an unprecedented response from government leaders, with governors using emergency powers and other executive actions to implement their states' response and to facilitate recovery efforts. Because of governors' leading role during these declared states of emergency, it is imperative that governors be able to make official decisions in good faith to protect the health, safety, and welfare of their citizens without the "fear of having to later explain their thinking in depositions in federal court." Diss.10 (Baker, J., dissenting).

The test for obtaining a deposition of a high-ranking government official is supposed to be so strict that it serves as a disincentive to parties who may consider seeking such extraordinary relief. But the panel majority opinion in this case will *encourage* the pursuit of depositions of such officials. The test is largely toothless, and the prospect of obtaining a deposition of a governor or former governor will have opposing counsel lining up. States may feel they have no choice but to settle cases or make

other compromises or concessions to avoid the governor's time being consumed with constant depositions. That is no way to run a state—or a legal system. *See* Diss.1 (Baker, J., dissenting).

"High ranking government officials have greater duties and time constraints than other witnesses," and thus "[t]heir time is very valuable." *Dep't of Educ.*, 25 F.4th at 700. Without a stringent test for obtaining depositions of such individuals, they "would spend an inordinate amount of time tending to pending litigation." 15 A.L.R. Fed 3d Art. 5 (2016). "In short, the executive branch's execution of the laws can be crippled if courts can unnecessarily burden [high-ranking officials] with compelled depositions." *Dep't of Educ.*, 25 F.4th at 701.

This same concern applies equally to "state and local officials," who "undoubtedly share an interest in minimizing the distraction of diverting their time, energy, and attention" to deal with depositions, *Lee v. City of L.A.*, 908 F.3d 1175, 1187 (9th Cir. 2018) (cleaned up), which often "serve[] little purpose other than to disrupt 'a busy official who should not be taken away from his work to spend hours or days answering lawyers' questions,'" *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999). And that concern continues even after the official has left office because

the "threat of having to spend their personal time and resources preparing for and sitting for depositions could hamper and distract officials from their duties while in office" and "also discourage them from taking that office in the first place or leaving office when there is controversy." *Dep't of Educ.*, 25 F.4th at 705.

## III. The Majority Opinion Ignored Half the Test for Whether On-Point Circuit Case Law Exists.

Rehearing is warranted for yet another reason: the majority's analysis of clear error omitted half the relevant test. This Court has repeatedly held that clear error can be shown where "the issue in question" was "addressed by *any* circuit court in a published opinion." *In re Grice*, 974 F.3d 950, 955 (9th Cir. 2020) (emphasis added); *see In re Mersho*, 6 F.4th 891, 898 (9th Cir. 2021); *Medhekar v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 99 F.3d 325, 327 (9th Cir. 1996).

Oregon's rehearing petition aptly explains why this Court has in fact previously ruled on this point and in Oregon's favor. But even if that were not the case, the panel holding is *still* incorrect because numerous other circuits have addressed this *precise* issue and held that mere allegations of bad faith are inadequate to satisfy the exceptional circumstances test.

The Fifth Circuit has held that "allegations of misconduct" and "assertions of gross abuse" are not enough to warrant a deposition of a high-level government official, and thus there must be a "strong showing of bad faith or improper behavior." *In re FDIC*, 58 F.3d 1055, 1062 (5th Cir. 1995). The Eighth Circuit put it just as clearly: "Allegations that a high government official acted improperly are insufficient to justify the subpoena of that official unless the party seeking discovery provides compelling evidence of improper behavior and can show that he is entitled to relief as a result." *In re United States*, 197 F.3d 310, 314 (8th Cir. 1999). Allegations are never enough. There must be "evidence."

It is difficult to imagine two more clearly on-point, precedential decisions of other circuit courts. Under this Court's precedent, those other circuits' decisions were *necessarily* sufficient to demonstrate that the district court clearly erred.

The panel majority here quoted that part of the clear-error inquiry but then simply never addressed it. *See* Op.4. That was a serious error because there are undoubtedly numerous "published opinion[s]," *Grice*, 974 F.3d at 955, from other circuits rejecting the district court's position here, *see* Diss.5 n.3 (Baker, J., dissenting). Under this Court's own test

for clear error, those Fifth and Eighth Circuit decisions—which represented the unanimous view of the circuit courts, until the majority decision in this case—were more than sufficient to warrant a finding of clear error by the district court here.

The split created by the panel majority opinion is of particular concern to *amicus*, which represents the interests of every governor across the nation. Whether governors will be subjected to constant depositions now turns largely on whether they are located in the Ninth Circuit with its newfound test allowing depositions at the drop of a hat, or instead are located in the rest of the country.

This Court should grant rehearing and reestablish the uniformity of law on this topic that had prevailed for decades before the panel opinion in this case.

## CONCLUSION

The Court should grant rehearing.

Respectfully submitted,

<u>/s/ R. Trent McCotter</u>
JENNIFER L. MASCOTT
R. TRENT MCCOTTER
  *Counsel of Record*
Separation of Powers Clinic
Gray Center for the Study of
  the Administrative State
Antonin Scalia Law School
George Mason University
3301 Fairfax Dr., Suite 430
Arlington, VA 22201
(202) 706-5488
rmccotte@gmu.edu
Counsel for *Amicus Curiae*

**CERTIFICATE OF COMPLIANCE**

I certify that this motion complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because this brief was prepared in 14-point Century Schoolbook, a proportionally spaced typeface, using Microsoft Word. Fed. R. App. P. 29(a), 32(g)(1). This motion complies with the type-volume limitation of Ninth Circuit Rule 29-2(c)(3) because it contains 2844 words, excluding the parts exempted under Rule 32(f).

/s/ R. Trent McCotter

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2024, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/EFC filing system and that service will be accomplished using the appellate CM/ECF system.

/s/ R. Trent McCotter